**10 CIV 9263**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELLA MAY PEASE, individually and on behalf )
of all others similarly situated, )
)
                       Plaintiff, )
)
v. )
)
ROCCO COMMISSO, MARK STEPHAN, )
THOMAS REIFENHEISER, NATALE )
RICCIARDI, ROBERT WINIKOFF, SCOTT )
SEATON, MEDIACOM COMMUNICATIONS )
CORPORATION, and JMC )
COMMUNICATIONS LLC, )
)
                       Defendants. )
)

Index No. _____

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS AND STATE LAW
BREACHES OF FIDUCIARY DUTY

JURY TRIAL DEMANDED

Plaintiff, by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this shareholder class action in connection with the proposed buyout (the "Buyout") of Mediacom Communications Corporation ("Mediacom" or the "Company") by Rocco Commisso ("Commisso"), the Company's CEO, Chairman, and controlling shareholder, alleging that the members of Mediacom's board of directors (the "Board") (Mediacom, Commisso, and the Board, collectively, "Defendants").

2. Pursuant to the parties' agreement (the "Merger Agreement Commisso seeks to acquire all of the outstanding shares of the Company not already owned by him by means of an unfair process and for an unfair price of $8.75 in cash for each share of Mediacom common stock.

3. Based on the Company's intrinsic value, recent performance, and future

prospects, the consideration Mediacom's shareholders stand to receive is wholly inadequate. Plaintiff, therefore, brings this action on the basis that the Board members breached their fiduciary duties to the Company's shareholders by agreeing to an inadequate Buyout pursuant to a deficient sales process.

4. The Board members have further breached their fiduciary duties by agreeing to numerous anticompetitive deal protection devices that operate in concert to ensure that no other parties will come forward with a superior acquisition proposal. In particular, the Board agreed not to solicit better merger or acquisition proposals; and in the event that a superior bid arises, either (a) Commisso has the right to match the competing bid or (b) Mediacom must pay Commisso millions of dollars simply to proceed with the superior bid. Realistically, therefore, no superior offers are likely to emerge.

5. Moreover, as a precursor to soliciting shareholder approval of the proposed Buyout, the Company filed a filed a Schedule 14A Proxy Statement (the "Proxy") and Schedule 13E-3 Statement with the U.S. Securities and Exchange Commission (the "SEC") on December 3, 2010. The Proxy carefully sets forth certain information about the Buyout. However, in violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder as well as Defendants' fiduciary duties of candor, the Proxy fails to provide the Company's shareholders with key information pertaining to the Buyout, including facts concerning the sales process leading up to the execution of the Merger Agreement, key data relating to the Company's financial outlook, the financial analyses which purportedly support the "fairness" of the Buyout consideration, and numerous other details which shareholders are entitled to receive before being forced to vote on the Buyout.

6. Accordingly, to prevent the Company's shareholders from suffering irreparable

harm from (i) consummating an unfair and inadequate Buyout and (ii) holding a vote on the Buyout before shareholders have received material information, Plaintiff seeks to enjoin, preliminarily and permanently, the Commisso's proposed Buyout of Mediacom.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14a-9. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District. In addition, Mediacom maintains its principal executive offices in Middletown, Orange County, New York.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Mediacom.

10.    Mediacom is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at 100 Crystal Run Road, Middletown, New York 10941, and is the nation's eighth largest cable television company and one of the leading cable operators focused on serving the smaller cities in the United States, with a significant concentration in the Midwestern and Southeastern regions.

11.    Defendant Rocco Commisso is the Chairman, Chief Executive Officer, and a director of the Company. Commisso has 30 years of experience with the cable industry and has served as the Company's Chairman and Chief Executive Officer since founding the Company in July 1995. Commisso beneficially owns Class A and Class B common stock of the Company equating to approximately 86% of the aggregate voting power of the Company, and is the Company's controlling stockholder.

12.     Defendant Mark Stephan ("Stephan") has been the Company's Chief Financial Officer, Executive Vice President, and a director of the Company since 2005.

13.     Defendant Thomas Reifenheiser ("Reifenheiser") has been a director of the Company since 2000.

14.     Defendant Natale Ricciardi ("Ricciardi") has been a director of the Company since 2000.

15.     Defendant Robert Winikoff ("Winikoff") has been a director of the Company since 2000.

16.     Defendant Scott Seaton ("Seaton") has been a director of the Company since 2009.

17.     Defendants referenced in ¶¶ 11 through 16 are collectively referred to as Individual Defendants and/or the Mediacom Board. The Individual Defendants as officers and/or directors of Mediacom, have a fiduciary relationship with Plaintiff and other public shareholders of Mediacom and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

18.     Defendant JMC Communications LLC ("Merger Sub") is a Delaware limited liability company that was created by Commisso for the purposes of effectuating the Proposed Transaction.

### INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

19.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Mediacom and owe them, as well as the Company, a duty of highest good faith, loyalty and full, candid and adequate disclosure.

20.     To diligently comply with their fiduciary duties, the Individual Defendants may

4

not take any action that:

    (a)    adversely affects the value provided to the corporation's shareholders;

    (b)    favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

    (c)    contractually prohibits them from complying with their fiduciary duties;

    (d)    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

    (e)    will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

21.    In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

    (a)    participating in any transaction where the Individual Defendants' loyalties are divided;

    (b)    participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

    (c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

22.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty and good faith owed to Plaintiff and other public shareholders of Mediacom, or are aiding and abetting others in violating those duties.

23.    Defendants also owe the Company's stockholders a duty of candor, which

includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Mediacom common stock and their successors in interest, except Defendants and their affiliates (the "Class").

25. This action is properly maintainable as a class action for the following reasons:

(a) the Class is so numerous that joinder of all members is impracticable. As of December 6, 2010, Mediacom has approximately 68.27 million shares outstanding.

(b) questions of law and fact are common to the Class, including, inter alia, the following:

(i) Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(a) of the Exchange Act;

(ii) Have the Individual Defendants breached their fiduciary duties owed by them to Plaintiff and the others members of the Class;

(iii) Are the Individual Defendants, in connection with the Proposed Transaction of Mediacom by Commisso, pursuing a course of conduct that is in violation of their fiduciary duties;

(iv) Have the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

      (v)      Have Mediacom and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

      (vi)      Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## FURTHER SUBSTANTIVE ALLEGATIONS

26. Mediacom is the nation's eighth largest cable television company and one of the leading cable operators focused on serving the smaller cities in the United States, with a significant concentration in the Midwestern and Southeastern regions. Mediacom offers a wide array of broadband products and services, including traditional and advanced video services such as digital television, video-on-demand, digital video recorders, high-definition television, as well as high-speed Internet access and phone service.

27.  The Company has had two consecutive quarters of strong results and is poised for even more growth. On August 6, 2010, the Company announced its financial results for the quarter ending June 30, 2010. The Company reported that revenues were $377.0 million, a 3.4% increase from the prior year period. Revenue growth was "largely due to continued growth in high-speed data and, to a lesser extent, phone and advertising revenues." On November 8, 2010, the Company announced its financial results for the third quarter ending September 30, 2010. The Company reported revenues of $374.4 million, a 3.0% increase from the prior year period.

28.  Despite its promise and recent performance, the Company agreed to enter into the Proposed Transaction. In a press release dated November 15, 2010, the Company announced that it had entered into a merger agreement with Commisso pursuant to which Commisso, through Merger Sub, will acquire all of the outstanding shares of the Company not already by Commisso in a going-private transaction for $8.75 cash for each share of Mediacom common stock.

29.  Commisso is the Company's controlling stockholder beneficially owning Class A and Class B common stock of the Company equating to approximately 86% of the aggregate voting power of the Company, and is the Company's controlling stockholder. Commisso is seeking to acquire the remainder of the Company for his own at a time when it is poised for growth and is paying a grossly inadequate price. Because Commisso is the Company's controlling stockholder, the Board is beholden to him and is unable to adequately review the fairness of the Proposed Transaction. As stated in the Company's latest Annual Report filed with the SEC on March 17, 2010:

> As a result, Mr. Commisso generally has the ability to control the outcome of all matters requiring stockholder approval, including the election of our entire board of directors, the approval of any merger or consolidation and the sale of all or substantially all of our assets. In addition, Mr. Commisso's voting power may have the effect of discouraging offers to acquire us because any such

8

acquisition would require his consent.

30.  Given the Company's recent performance and future prospects, the consideration shareholders are to receive is inadequate. Mediacom shareholders are being cashed out at the unfairly low price of $8.75 per share, which doesn't adequately take into account the tremendous growth potential for Mediacom.

31.  The *Discounted Cash Flow Analysis – Nominal Perpetuity Growth Rate* conducted by Barclays Capital Inc. ("Barclays"), the Special Committee's financial advisor, yielded a value for the Company as high as $27.84 per share. In fact, using the forecasts provided by Company management in June 2010, the implied value range of the Company in this analysis was calculated to be between $9.34 to $27.84, with even the low end of the range well above the Proposed Transaction price. Using the revised projections prepared by the Company's management in September 2010, the value of the Company calculated in the analysis was as high as $23.95 per share. The *Selected Comparable Company Analysis* conducted by Barclays yielded a value for the Company as high as $15.71 per share. Yet, even with these high valuations, the Special Committee still inexplicably decided to forego the Company's tremendous growth prospects in order to enter into the Proposed Transaction.

32.  Accordingly, Commisso is picking up Mediacom at the most opportune time, at a time when Mediacom is poised for growth and its stock price is trading at a huge discount to its intrinsic value.

***The Preclusive Deal Protection Devices***

33.  In addition, on November 18, 2010, the Company filed a Form 8-K with the United States Securities and Exchange Commission ("SEC") wherein it disclosed the Merger Agreement. As part of the Merger Agreement, Defendants agreed to certain onerous and

preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

34. By way of example, §5.07(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from attempting to procure a price in excess of the amount offered by Commisso. This section also demands that the Company terminate any and all prior or on-going discussions with other potential suitors. Despite the fact that they have locked up the Company and bound it to not solicit alternative bids, the Merger Agreement provides other ways that guarantee the only suitor will be Commisso.

35. Pursuant to §5.07 of the Merger Agreement, should an unsolicited bidder arrive on the scene, the Company must notify Commisso of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, Commisso is granted four business days to amend the terms of the Merger Agreement to make a counter-offer that only needs to be at least as favorable to the Company's shareholders as the unsolicited offer. Commisso is able to match the unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the unsolicited offer.

36. In other words, the Merger Agreement gives Commisso access to any rival bidder's information and allows Commisso a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Commisso and piggy-back upon the due diligence of the foreclosed second bidder.

37. In addition, the Merger Agreement provides that the Company must reimburse Commisso's expenses of up to $2.5 million if the Company decides to pursue said other offer,

thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

38. Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Commisso's inadequate offer price.

***Mediacom's Executives Officers and Directors Stand to Receive Unique Material Financial Benefits in the Proposed Transaction Not Available to Mediacom's Public Shareholders***

39. The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of Mediacom's public shareholders.

40. Certain of the Company's directors hold unvested shares and restricted stock units of the Company that that, prior to the consummation of the Proposed Transaction, will vest and/or no longer be subject to the restrictions and will entitle the holder to receive the Proposed Transaction consideration of $8.75 per share.

41. As stated in the Proxy:

> *Unvested Employee Stock Options.* Each outstanding, unvested and unexercised option to purchase shares of our common stock held by an employee of Mediacom (including our executive officers) will be cancelled and the holder thereof (other than Mr. Commisso) will be entitled to receive a cash payment on each vesting date (subject to vesting in accordance with the vesting schedule provided in the applicable option award agreement) equal

to the product of (a) the number of shares of our common stock previously subject to such option that would have vested on such date multiplied by (b) the excess, if any, of $8.75 over the exercise price per share previously subject to such option, subject to applicable tax withholding.

*Employee Restricted Stock Units.* Each outstanding restricted stock unit representing shares of our common stock held by an employee of Mediacom (including our executive officers) will be cancelled and the holder thereof (other than Mr. Commisso) will be entitled to receive a cash payment on each vesting date (subject to vesting in accordance with the vesting schedule provided in the applicable agreement) equal to the product of (a) the number of shares of our common stock previously subject to such unit that would have vested on such date multiplied by (b) $8.75, subject to applicable tax withholding.

*Non-employee Director Stock Options.* As of the effective time of the merger, each outstanding and unexercised option to purchase shares of our common stock (whether vested or unvested) held by a non-employee director of Mediacom will be cancelled and the holder thereof will be entitled to receive a cash payment promptly following the merger equal to the product of (a) the number of shares of our common stock previously subject to such option multiplied by (b) the excess, if any, of $8.75 over the exercise price per share previously subject to such option, subject to applicable tax withholding.

*Non-employee Director Restricted Stock Units.* As of the effective time of the merger, each outstanding restricted stock unit representing shares of our common stock held by a non-employee director of Mediacom will be cancelled and the holder thereof will be entitled to receive a cash payment promptly following the merger equal to the product of (a) the number of shares of our common stock previously subject to such unit multiplied by (b) $8.75, subject to applicable tax withholding.

The Proxy, however, fails to, but should disclose the amount and value of the unvested shares and restricted stock units held by each executive officer and director.

42. Based on the above, the Proposed Transaction is unfair to Mediacom's public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.

***The Materially Misleading and Incomplete Proxy Statement***

43. On December 3, 2010, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in connection with the Proposed Transaction. The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to cast an informed vote regarding the Proposed Transaction.

44. For example, the Proxy completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Barclays Capital Inc. ("Barclays"), the Special Committee's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Barclays and relied upon by the Special Committee in recommending the Proposed Transaction.

45. With respect to the *Selected Comparable Company Analysis*, the Proxy should disclose (a) the criteria used to select the companies it deemed "comparable" to the Company and used in the analysis; (b) the 2011 EBITDA and 2011 LFCF amounts for the Company used in the anaysis; and (c) the criteria used to select the multiple ranges that were selected and applied to the Company's corresponding financial data in the analysis.

46. With respect to the *Discounted Cash Flow Analysis*, the Proxy should disclose the criteria used to select the perpetuity growth rates of 2.0% to 3.0% used in the analysis and the calculations and multiples observed for the end of third quarter period of 2010 in the comparable company analysis used to select the terminal value multiples of 5.5x to 6.5x.

47. With respect to the *Levered Paydown Analysis*, the Proxy fails to disclose (a) which "certain comparable companies" were observed when selecting an EBITDA multiple of 5.9x, and (b) the criteria used to select a 15.0% and 12.0% percent used in the analysis. The

Proxy should also disclose the criteria used to select the terminal value multiples and internal rates of return used in the *Leveraged Acquisition Analysis.*

48.     In addition, the presentation given by Barclays Capital to the Special Committee on November 12, 2010 includes a Cable M&A Transactions analysis, but the Proxy fails to disclose that this analysis was performed. The Proxy should disclose this analysis, including the multiples observed and the results of the analysis.

49.     The Proxy also completely fails to disclose the underlying methodologies, key inputs and multiples relied upon and observed by Commisso's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"). In particular, the Proxy should disclose:

    (a)     The criteria used to determine which companies were considered "similar" to the Company and used in the *Comparable Publicly Traded Companies Analysis.*

    (b)     The reasons Cablevision was excluded and not considered when selecting multiple ranges in *Comparable Publicly Traded Companies Analysis.*

    (c)     The transactions used and premiums observed for each transaction in the *Premium Summary of Minority Buy-In Transactions* analysis.

50.     The Proxy also fails to disclose material information concerning the negotiations between Commisso and the Special Committee. In particular, the Proxy should disclose:

    (a)     The reasons Commisso became interested in taking the Company private in May 2010.

    (b)     The reasons Commisso wanted to reach an agreement with the Special Committee "as soon as possible" as indicated to the Special Committee on June 24, 2010.

    (c)     The "the ranges at which Barclays Capital might be willing to deliver a

fairness opinion" that was discussed on August 7, 2010.

(d) The "key differences" between Barclays' analysis and J.P. Morgan/BofA Merrill Lynch's analysis discussed on August 24, 2010.

51. The Proxy also fails to describe material information concerning the financial benefits received by the Company's executive officers and directors in connection with the merger. In particular, the Proxy states that the unvested shares and restricted stock units held by the Company's directors and officers will vest and no longer be subject to restrictions upon consummation of the Proposed Transaction and will entitle the holder to receive the merger consideration for each such previously unvested or restricted share. However, the Proxy fails to, but should, disclose the amount and value of the unvested shares and restricted stock units held by each executive officer and director.

52. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Transaction.

55. Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

56. Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have know that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## COUNT II
## Breach of Fiduciary Duty
## (Against All Individual Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. As directors of Mediacom, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care.

60. As discussed herein, the Individual Defendants have breached their fiduciary duties to Mediacom shareholders by failing to engage in an honest and fair sale process.

61. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Mediacom's assets and will be prevented from benefiting from a value-maximizing transaction.

62. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

63. Plaintiff and the Class have no adequate remedy at law.

## COUNT III
## Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Mediacom's shareholders.

66. As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

67. As a result, Plaintiff and the Class members are being harmed irreparably.

68. Plaintiff and the Class have no adequate remedy at law.

## COUNT IV
## Aiding and Abetting
### (Against Mediacom, Commisso, and Merger Sub)

69. Plaintiff repeats all previous allegations as if set forth in full herein.

70. As alleged in more detail above, Mediacom, Commisso, and Merger Sub are well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders. Defendants Mediacom, Commisso, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties.

71. As a result, Plaintiff and the Class members are being harmed.

72. Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

    (A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

    (B) declaring that the Proxy is materially misleading and contains omissions

of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) enjoining, preliminarily and permanently, the Proposed Transaction;

(D) in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated: December 10, 2010
New York, NY

**LEVI & KORSINSKY, LLP**

By: _____
W. Scott Holleman (WH-0328)
30 Broad Street, 15th Floor
New York, New York 10004
T:(212) 363-7500
F: (212) 363-7171
E: sholleman@zlk.com

*Attorneys for Plaintiff*

18

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Ella May Pease, certify that:

1. I am the Plaintiff and I have reviewed the complaint and authorized its filing by Levi & Korsinsky, LLP.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Mediacom Communications Corp. ("Mediacom") securities which are the subject of this litigation during the class period set forth in the complaint are as follows:

| Security | Date of Transaction | Number of Shares Purchased or Sold | Cost |
|---|---|---|---|
| Mediacom | 3-4-2000 | 100.00 | $1,900.00 |
|  | 9-3-2000 | 19.4322 | 251.89 |
|  | 2-5-2001 | 20.2929 | 327.73 |
| Mediacom | 5-3-2001 | 21.0376 | 313.04 |
|  | 6-2-2005 | 25.00 | 0-gift |

5. Within the last 3 years, I have not served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class, except to receive my pro rata share of any recovery or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated: December 6, 2010

*Ella May Pease*
Ella May Pease

*M.R.S.*
12-8-2010    Rol 10.

MICHAEL R. SMITH
Notary Public - State of Florida
My Comm. Expires Apr 6, 2014
Commission # DD 974900
Bonded Through National Notary Assn.